O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#13/18/27

CIVIL MINUTES - GENERAL

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):  Attorneys Present for Defendant(s):

Not Present   Not Present

**Proceedings:**   **(In Chambers) Order Denying Defendant's Motion to Dismiss and Special Motion to Strike [13, 18]**

Pending before the Court are Defendant Maximus' Motion to Dismiss and Special Motion to Strike. A hearing on the motions was held on October 19, 2009. After considering the moving and opposing papers and arguments presented at the hearing, the Court DENIES Defendant's motions.

I.   Background

Plaintiff Cedars-Sinai ("Plaintiff") is a non-profit hospital providing general health services to patients in Los Angeles, California. Plaintiff allegedly treated five patients, resulting in six claims for over $1.65 million. Plaintiff submitted the claims to Defendant Global Excel Management ("Global Excel"), which either insured or administered the claims for other Defendant international insurance companies ("the Insurance Company Defendants"). Global Excel submitted the claims to Maximus, Inc. ("Maximus"), which "purports to be an 'independent review organization endorsed by the state of California.'" *Compl.* ¶ 5. Maximus evaluated the "reasonable and customary" value of the claims and recommended payment amounts to Global Excel. *See id.* ¶ 2. In every instance, Maximus determined that the claims were worth precisely 200 percent of the Medicare Diagnosis Related Group ("the Medicare DRG"), which is the amount that Medicare would pay on the claims. *See id.* ¶ 18. Global Excel paid Plaintiff according to Maximus' recommendations and informed Plaintiff that Maximus determined each claim to be worth 200 percent of the Medicare DRG. *See id.*

On May 21, 2009, Plaintiff filed a Complaint against Maximus, Global Excel, and the

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

Insurance Company Defendants. According to the Complaint, "Medicare rates do not reflect fair market value rates, are not set through any reasonable and customary analysis, [and] are unilaterally determined by the federal government solely for use as a payor of last resort to cover elderly individuals entitled to Medicare coverage." *Id.* ¶ 8. Thus, by allegedly pegging the claims to 200 percent of the Medicare DRG, Maximus did not provide an estimate of the reasonable and customary value of the claims. Furthermore, Plaintiff alleges that Maximus received compensation from the Insurance Company Defendants for reducing their liability on the claims. *See id.* ¶ 20. At one point elsewhere in the Complaint, Plaintiff claims that "at all relevant times each of the defendants was the agent and employee of each of the remaining defendants, and in doing the things hereinafter alleged was acting within the course and scope of such agency and employment." *Id.* ¶ 12.

On July 6, 2009, Maximus filed a Motion to Dismiss pursuant to Rule 12(b)(6) and a Special Motion to Strike pursuant to California's statute prohibiting strategic lawsuits against public participation ("SLAPP"), Cal. Code Civ. P. § 425.16(b) ("the anti-SLAPP statute"), including a request for attorneys' fees and costs pursuant to § 425.16(c). Plaintiff filed opposition papers to both motions, including a request for attorneys' fees and costs pursuant to the anti-SLAPP statute, and Maximus subsequently filed replies.[1] Each motion will be addressed in turn.

II.    Maximus' Rule 12(b)(6) Motion to Dismiss

According to its Rule 12(b)(6) motion, Maximus seeks the dismissal of the following causes of action alleged in the Complaint: (1) the sixth cause of action for intentional interference with prospective economic relations, (2) the seventh cause of action for negligent interference with prospective economic relations, (3) the eighth cause of action for intentional interference with contractual relations, as an assignee, and (4) the ninth cause of action for unfair

---

[1] Maximus' replies violated the Court's Standing Order. Maximus' Reply to Plaintiff's Opposition to Motion to Dismiss was 18 pages, and its Reply to Plaintiff's Opposition to Special Motion to Strike the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and California Code of Civil Procedure § 425.16 was 24 pages. *See Standing Order* § 5(c) ("Replies shall not exceed 12 pages."). Because Maximus failed to request leave of the Court to file over-length briefs in reply to the oppositions, the Court considers only the first 12 pages of the replies.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

business practices under Cal. Bus. & Prof. Code §§ 17200, *et seq.*[2]

    A.    Standard of Review

    Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules of Civil Procedure require that the complaint merely contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim to relief. *See id.*

    In deciding a Rule 12(b)(6) motion, the court must engage in a two-step analysis. *See id.* at 1950. First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must then determine whether the complaint alleges a plausible claim to relief. *See Ashcroft*, 129 S. Ct. at 1950. Despite the liberal pleadings standards of Rule 8, conclusory allegations will not save a complaint from dismissal. *See id.* ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

    B.    Discussion

    Maximus seeks the dismissal of the following four causes of action alleged in the Complaint: (1) intentional interference with prospective economic relations, (2) negligent interference with prospective economic relations, (3) intentional interference with contractual

---

[2] Of the nine causes of action asserted in the Complaint, these are the only claims alleged against Maximus.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

relations, as an assignee, and (4) unfair business practices under Cal. Bus. & Prof. Code §§ 17200, *et seq.*.

        1.      <u>Intentional Interference with Prospective Economic Relations</u>

Intentional interference with prospective economic relations requires proof of the following elements: (1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff, (2) the defendant's knowledge of the relationship, (3) intentional acts on the part of the defendant intended to disrupt the relationship, (4) actual disruption, and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *See Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 54 Cal. Rptr. 2d 888 (1996).

Maximus broadly argues that it cannot be held liable for intentional interference on the following grounds: (1) the general allegation of agency, (2) the common interest privilege of Cal. Civ. Code § 47 (c), (3) the common law advisor's or agent's privilege, (4) the absence of an independent wrongful act, and (5) the failure to allege causation.

        a.      <u>The General Agency Allegation</u>

An agent cannot be held liable for tortious interference with prospective economic relations. *See Kasparian v. Los Angeles*, 8 Cal. App. 4th 242, 45 Cal. Rptr. 2d 90 (1995). Thus, if Maximus was an agent of Global Excel and the other Insurance Company Defendants when it issued its recommendations, Maximus would not be liable for any of Plaintiff's interference claims. In paragraph 12 of the Complaint, Plaintiff alleges the following:

> Cedars-Sinai is informed and believes that at all relevant times each of the defendants was the agent and employee of each of the remaining defendants, and in doing the things hereinafter alleged was acting within the course and scope of such agency and employment.

*Compl.* ¶ 12. In its motion to dismiss, Maximus seizes upon this passage and argues that, assuming this statement to be true, Maximus was an agent of Global Excel and the Insurance Company Defendants and, thus, cannot be held liable for interference.

Plaintiff counters that the general agency allegation should not defeat its claims against Maximus because the Complaint alleges elsewhere that Maximus purported to be independent

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#13/18/27

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

and the Complaint was merely pleaded in the alternative. In paragraph 5, Plaintiff claims that Maximus "purports to be an 'independent review organization endorsed by the State of California.'" *Compl. ¶ 5*. In order to qualify as a pleading in the alternative, however, the factual allegations must be inconsistent. Even if it were accepted as true that Maximus "purported" to be independent, it still could have been an agent at the same time. Plaintiff does allege that Maximus *was* an independent review organization. Rather, Plaintiff merely claims that Maximus *purported* to be independent. Indeed, Plaintiff's use of the word "purported" implies a suspicion of Maximus' claim to independence.[3] Thus, the allegations in the complaint, assumed to be true, do not establish alternative factual pleadings.

Nevertheless, the Court is hesitant to accept Maximus' argument that Plaintiff has pleaded itself out of its own claims by saying too much. A Rule 12(b)(6) motion to dismiss usually penalizes a plaintiff for saying too little. In this case, will the Court construe paragraph 12 of the Complaint—a generalized claim of agency—in a way that defeats three of the four claims specifically alleged against Maximus? The Court will not for the following two reasons.

First, the vague and general agency claim is not entitled to a presumption of truth. The Court does not accept conclusory allegations as true. *See Ashcroft*, 129 S. Ct. at 1950. Examining the Complaint as a whole, Plaintiff does not present sufficient facts to indicate that Maximus acted as an agent of Global Excel and the Insurance Company Defendants.[4] A principal-agent relationship exists if an agent or apparent agent holds the power to alter the relations between the principal and third persons, if an agent is a fiduciary, or if the principal has a right to control the conduct of the agent with matters entrusted to him. *See Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964, 56 Cal. Rptr. 3d 177 (2007). However, the Complaint does not suggest that Maximus had any power to act on behalf of Global Excel or Insurance Company Defendants, that Maximus was a fiduciary, or that Global Excel and the Insurance Company Defendants exerted any control over Maximus.

---

[3] The word "purport" has a negative connotation, which suggests that the purported claim is false or misleading. *See The American Heritage Desk Dictionary* (4th ed. 2008) ("To profess to be, often falsely.").

[4] Plaintiff notes that Maximus is not named as a defendant to the first cause of action for breach of contract, which would have been possible if Maximus had been an agent of Global Excel and the Insurance Company Defendants. *See Opp.* 11:6-8.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

Second, the exact words of the general agency claim do not necessarily implicate Maximus. The general agency allegation is limited to "all relevant times." Based upon the plain language of the allegation and the purpose of filing a complaint in the first place, the allegation applies to all times that are "relevant" to establishing liability. If Maximus were at any time an agent of Global Excel or the Insurance Company Defendants, that fact would not be "relevant" to the claims. For these reasons, the general agency allegation in paragraph 12 of the Complaint does not warrant dismissal.[5]

        b.        <u>Common Interest Privilege</u>

Maximus argues that the recommendations made to Global Excel and the Insurance Company Defendants were privileged communications. The statutory common interest privilege immunizes the speaker from tort liability for communications made without malice to a person requesting the information. *See* Cal. Civ. Code § 47(c)(3). The Court's evaluation of the common interest privilege involves a burden shifting approach. The defendant bears the initial burden of proving that the communication is covered by the privilege, and if the defendant can prove that the communication is covered, the burden shifts to the plaintiff to prove malice. *See Lundquist v. Reusser*, 7 Cal. 4th 1193, 1196-97, 31 Cal. Rptr. 2d 776 (1994). The determination of whether the common interest privilege applies is a question of law.[6] *See Inst. Athletic Motivation v. Univ. of Ill.*, 114 Cal. App. 3d 1, 13 n.5, 170 Cal. Rptr. 411 (1980).

In order to apply the common interest privilege to Maximus' recommendations, the communications must first fall within the scope of the privilege. According to the Complaint, Global Excel informed Plaintiff that each claim was "submitted to Maximus for 'evaluation' of

---

[5] The alternative to the above rationale is a dismissal with leave to amend. Unlike pleadings in which the plaintiffs do not—and likely cannot—allege sufficient facts to state a claim, Plaintiff in this case will merely file an amended complaint with paragraph 12 deleted. Such technical exactness is inconsistent with the liberal notice pleading standard of Rule 8 and does not comport with the interests of judicial economy.

[6] Plaintiff argues that the common interest privilege is an affirmative defense that cannot be found on a motion to dismiss, citing *MacQuairie Group Ltd. v. Pac. Corp. Group, LLC*, 2009 WL 539928 (S.D. Cal. 2009). Plaintiff is mistaken, however, because *MacQuairie* involved a federal district court in California applying New York law and, thus, did not involve the statutory privilege of California Civil Code § 47(c).

**O**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

the claim to determine the 'reasonable and customary' rate of reimbursement." *Compl.* ¶ 18. In acting on each submission, Maximus determined the reasonable rate for each claim was 200 percent of the Medicare DRG and communicated this calculation to Global Excel. Thus, Maximus made its recommendations in response to requests by Global Excel, falling within the scope of the common interest privilege. *See* Cal. Civ. Code § 47(c)(3).

As the communication was covered by the privilege, the burden shifts to Plaintiff to show malice. Malice, as used in § 47(c), can be satisfied "by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and thereafter acted in reckless disregard for the plaintiff's rights." *Taus v. Loftus*, 40 Cal. 4th 683, 721, 54 Cal. Rptr. 3d 775 (2007) (emphasis in original) (quoting *Sanborn v. Chronicle Pub. Co.*, 18 Cal. 3d 406, 413, 134 Cal. Rptr. 402 (1976)); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 736 (9th Cir. 1999).[7] Reckless disregard can be established by a showing that the speaker lacked "a good faith belief in the truth of the statement." *Lundquist*, 7 Cal. 4th at 1213.

Maximus argues that the Complaint fails to allege malice because, assuming Maximus was compensated for providing a lower claim calculation, Maximus would have had a financial incentive to make the recommendations, and not the hatred or ill will required for malice. However, as Plaintiff argues, the Complaint alleges that Maximus' recommendations exhibited a reckless indifference to the true value of the claims.[8] *See Opp.* 17:1-15. According to the

---

[7] Maximus is incorrect in claiming that malice under § 47(c) is limited to "hatred or ill will." In its moving papers, Maximus cites *Cabanas v. Gloodt Associates*, 942 F. Supp. 1295, to claim that "'Malice,' as used in section 47(c), 'means a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injury another person.'" *Mot.* 10:10-12 (quoting *Cabanas*, 942 F. Supp. at 1301 n.7). Later in that same footnote, however, the court notes that "[m]alice may also be established by a showing that defendants 'lacked reasonable grounds to believe the statement true and therefore acted with *reckless disregard* for plaintiff's rights.'" *Id.* (emphasis added).

[8] Plaintiff also argues that it "need not allege specific facts of malice; rather a plaintiff's *general allegation of malice is sufficient* to overcome a defendant's motion to dismiss." *See Opp.* 16:23-24 (citing *Clement v. Am. Greetings Corp.*, 636 F. Supp. 1326 (S.D. Cal. 1986). However, the cases supporting Plaintiff's position are more than two decades old. *See, e.g.*, *Mullins v. Brando*, 13 Cal. App. 3d 409, 91 Cal. Rptr. 796 (1970); *Clement*, 636 F. Supp. 1326 (1986). This year, the U.S. Supreme Court reaffirmed that conclusory allegations are

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

Complaint, Maximus was responsible for determining the "reasonable and customary" rate of reimbursement on claims submitted by Global Excel and other Insurance Company Defendants, and not its mere opinion as to the value of the claims. *See Compl.* ¶ 18. Maximus allegedly determined that the proper reimbursement for each claim was precisely 200 percent of the Medicare reimbursement rate. *See id.* According to the Complaint, Medicare rates "have nothing to do with the rates that are owed for services provided outside the Medicare program, and do not take into consideration any, let alone all, of the industry standard factors for determining reasonable and customary rates in California." *Id.* ¶ 19. Additionally, Plaintiff claims that Global Excel and the Insurance Company Defendants compensated Maximus for providing a lower estimate on the claims, which would incentivize Maximus to disregard the true value of the claims. *See id.* ¶ 20. Thus, Plaintiff has sufficiently alleged that Maximus acted with reckless disregard for the truth of its recommendations, as Maximus lacked a reasonable belief in the accuracy of its calculations. Because Plaintiff alleges sufficient facts to establish that Maximus acted with malice in making the recommendations to Global Excel and other Insurance Company Defendants, Maximus is not entitled at this stage to the common interest privilege.

    c.  <u>Common Law Advisor's Privilege</u>

  The common law advisor's or agent's privilege extends to individuals or entities who serve as business advisors or agents. *See L.A. Airways, Inc. v. Davis*, 687 F.2d 321, 326 (9th Cir. 1982). The privilege exists to promote uninhibited advice by agents to their principals. *See id.* Maximus argues that the Complaint's general agency allegation supports a finding that the common law advisor's privilege applies to the recommendations. *See Mot.* 12:4-6. However, for the reasons previously stated, Maximus was not an agent based upon the facts alleged in the Complaint. Thus, Maximus cannot claim protection under the advisor's or agent's privilege. Therefore, at this stage, Maximus' communications were not subject to the common law advisor's privilege.

    d.  <u>Independent Wrongful Act</u>

  In order to state a claim for interference with contract or prospective economic relations, the plaintiff must allege a wrongful act independent of the interference. *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93, 45 Cal. Rptr. 2d 436 (1995). An act is

insufficient to survive a Rule 12(b)(6) motion to dismiss. *See Ashcroft*, 129 S. Ct. at 1950. Thus, Plaintiff is required to support a finding of malice with greater specificity.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

"wrongful" if it is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1157 (2003).

Maximus claims that Plaintiff failed to allege a wrongful act apart from the alleged interference. *See Mot.* 12:19. However, Maximus neglects Plaintiff's repeated claims of misrepresentation. *See Compl.* ¶ 52 ("*Independent of the interference itself*, Global Excel and Maximus engaged in conduct that was wrongful, including without limitation . . . intentionally or negligently materially misrepresenting the 'reasonable and customary' charges for health care services Cedars-Sinai provided to the Patients . . . ." (emphasis added)). Furthermore, as discussed below, Plaintiff has adequately alleged a violation of California's unfair business practices statute, which is adequate to establish an independent wrongful act. Therefore, Plaintiff has adequately alleged an independent wrongful act.

         e.      Substantial Factor

Maximus argues that Plaintiff cannot state any of its interference claims because Plaintiff has failed to allege causation. In order to allege an interference claim, the plaintiff is required to prove that the alleged conduct is a "substantial factor" in bringing about the harm. *See Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008) (noting that the "substantial factor standard generally produces the same results as does the 'but for' rule of causation which states that a defendant's conduct is a cause of the injury if the injury would not have occurred 'but for' that conduct" (quoting *Rutherford v. Owens-Ill., Inc.*, 16 Cal. 4th 953, 67 Cal. Rptr. 2d 16 (1997)); *see also Rutherford v. Owens-Ill., Inc.*, 16 Cal. 4th at 969 ("Undue emphasis should not be placed on the term 'substantial.' . . . [T]he substantial factor standard [was] formulated to aid plaintiffs as a broader rule of causality than the 'but for' test . . . .").

Maximus claims that its claims calculations were merely recommendations made to Global Excel and the Insurance Company Defendants, and that Global Excel and the Insurance Company Defendants were the parties who actually underpaid Plaintiff on the claims. However, Maximus' recommendations were accepted in every instance. These facts are sufficient to allege that Maximus' recommendations constituted a substantial factor in the alleged underpayment of Plaintiff's claims because, but for the recommendation, it is highly improbable that Global Excel and the Insurance Company Defendants would have paid at 200 percent of the Medicare DRG.

Maximus cites to *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 72 Cal. App. 4th 249, 84 Cal. Rptr. 2d 799 (1999), to argue that insurance adjusters are not liable to insured for

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

underpaid claims because the "insurer, not the adjuster, has the ultimate power to grant or deny coverage, and to pay the claim, delay paying it, or deny it." *Id.* at 253. Essentially, Maximus claims that, as in the insurance adjuster context, the insurance companies constitute a supervening force. However, *Sanchez* is distinguishable for two reasons. First, Maximus is not alleged to be an insurance adjuster. An insurance adjuster is an agent for the insurer, *see id.* at 256, and the Complaint does not sufficiently plead facts to indicate that Maximus was an agent of Global Excel or the Insurance Company Defendants. Second, *Sanchez* held that an insurance adjuster does not owe a duty of care to the insured in general negligence claims, while Maximus is seeking dismissal of an intentional interference claim. For these reasons, Plaintiff has adequately pleaded that Maximus' conduct was a substantial factor in causing the alleged harm.

  2. <u>Negligent Interference with Prospective Economic Relations</u>

Maximus applies the same arguments to Plaintiff's negligent interference claim. A claim for negligent interference with prospective economic relations requires proof of the following elements: (1) the existence of an economic relationship between the plaintiff and a third party that contained a reasonable probability of future economic benefit or advantage to the plaintiff, (2) the defendant's knowledge of the relationship, (3) the defendant's negligent conduct, (4) the negligence caused a foreseeable damage to the plaintiff in that the relationship was actually disrupted, and (5) economic harm. *See N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 786, 69 Cal. Rptr. 466 (1997).

For the same reasons discussed previously with regard to Plaintiff's intentional interference claim, the negligent interference claim will not be dismissed on the basis of the general agency allegation, the common interest privilege[9], the common law advisor's privilege, the lack of an independent wrongful act, or the absence of causation. Therefore, Plaintiff has adequately stated a claim for negligent interference with prospective economic relations.

  3. <u>Intentional Interference with Contractual Relations</u>

---

[9] As discussed previously, the facts as alleged are sufficient to support a finding that Maximus acted at least recklessly toward Plaintiff's rights under the claims. Thus, the allegations are sufficient to show both that Maximus failed to exercise due care (establishing negligence) and that Maximus acted with reckless disregard or malice (defeating the common interest privilege). Therefore, Plaintiff can defeat the common interest privilege based upon the alleged facts, even though it states a claim for negligent interference.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

Intentional interference with contract requires proof of (1) the existence of a valid contract, (2) the defendant's knowledge of the contract, (3) the defendant's intent to induce breach of the contract, (4) actual breach, and (5) damages proximately caused by the defendant's unjustified or wrongful conduct. *See Freed v. Manchester Serv., Inc.*, 165 Cal. App. 2d 186, 189, 331 P.2d 689 (1958). For the same reasons that Plaintiff adequately stated a claim for intentional interference with prospective economic relations, Plaintiff has adequately stated a claim for intentional interference with contractual relations. First, the general agency allegation was conclusory and limited to "all relevant times." Second, the common interest privilege does not apply because Maximus' alleged conduct is sufficient to infer malice. Third, the common law advisor's privilege does not apply because Plaintiff did not adequately allege agency. Fourth, Plaintiff alleged an independently wrongful act of misrepresentation. Finally, Plaintiff alleged that Maximus' conduct was a substantial factor because Global Excel and the Insurance Company Defendants adopted Maximus' recommendation on every claim. For these reasons, Plaintiff has stated a claim for intentional interference with contract.

4. Unfair Business Practices

Maximus argues that Plaintiff has failed to state a claim for unfair business practices under California law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, because Plaintiff purportedly lacks standing as required by Proposition 64 and because Maximus' conduct did not constitute an unfair business practice.

a. Standing

Since the passage of Proposition 64, a private party has standing to sue under California's unfair competition law only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code § 17204. Maximus furthers its standing argument to claim that the purported lack of causation also undermines Plaintiff's standing under Article III of the U.S. Constitution. *See Mot.* 15:18-21 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). According to Maximus, Plaintiff's alleged injury is not traceable to Maximus because Global Excel and the Insurance Company Defendants exercised independent judgment in accepting Maximus' recommendation. However, Plaintiff adequately pleads causation because Global Excel and the Insurance Company Defendants relied upon Maximus' recommendations in every instance. Furthermore, Plaintiff adequately pleads an injury in fact because the Complaint alleges a pecuniary loss on the claims based upon Maximus' recommendation. Therefore, Plaintiff has standing to sue under California's unfair competition law.

Case 2:09-cv-03627-PSG-AJW Document 58 Filed 12/04/09 Page 12 of 16 Page ID #:910

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

    b.  Unfair Conduct

  An unfair business practice under the statute is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008). Maximus argues that Plaintiff has failed to state a claim under California's unfair competition law because its conduct was fair, notwithstanding Plaintiff's disagreement with Maximus' recommendations. Indeed, as noted in the moving papers, Maximus makes similar recommendations to the state of California and the U.S. government. *See Mot.* 16. That Maximus may engage in a similar practice with other parties, however, does not make the practice fair in this case. Plaintiff alleges that it was entitled to a reasonable and customary reimbursement for the claims and that Maximus issued deflated recommendations to Global Excel and Insurance Company Defendants in exchange for payment. *See Compl.* ¶ 20. This allegation of misrepresentation and collusion is sufficient under the statute. *See McDonald*, 543 F.3d at 506; *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718-19, 113 Cal. Rptr. 2d 399 (2001) ("This [unfair business activity] standard is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud.").

    5.  Conclusion

  For the foregoing reasons, Plaintiff has adequately stated a claim for the following causes of action: (1) the sixth cause of action for intentional interference with prospective economic relations, (2) the seventh cause of action for negligent interference with prospective economic relations, (3) the eighth cause of action for intentional interference with contractual relations, as an assignee, and (4) the ninth cause of action for unfair business practices under California Business and Professions Code §§ 17200, *et seq.* Therefore, the Court DENIES Maximus' Rule 12(b)(6) Motion to Dismiss.

III. Maximus' Special Motion to Strike Pursuant to California's Anti-SLAPP Statute

  In a separate motion, Maximus seeks dismissal of Plaintiff's claims pursuant to Cal. Code Civ. P. § 425.16(b), characterizing Plaintiff's lawsuit as a SLAPP intended to chill Maximus' constitutional right to free speech. Additionally, both parties request attorneys' fees and costs incurred while litigating this motion.

  A.  Legal Standard

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

California law provides for a special motion to strike SLAPP claims. *See* Cal. Civ. Proc. Code § 425.16(b) ("A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."). SLAPP claims are filed with the intent of chilling constitutionally protected speech and should be dismissed if they lack merit. *See Batzel v. Smith*, 333 F.3d 1018, 1023-24 (9th Cir. 2003) ("These are lawsuits that masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so. The anti-SLAPP statute was enacted to allow for early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." (quotations and internal citations omitted)). Case law suggests that § 425.16 encompasses a wide range of expression. *See Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 893 (2004) (noting that the California legislature "added to section 425.16 the proviso that it 'shall be construed broadly.'"). Federal courts can grant special motions to strike pursuant to California's anti-SLAPP statute. *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963 (9th Cir. 1999). Furthermore, in resolving an anti-SLAPP motion, the district court considers supporting and opposing affidavits in addition to the pleadings. *See* Cal. Code Civ. P. § 425.16(b)(2).

    B.    <u>Discussion</u>

Resolving a special motion to strike under the anti-SLAPP statute involves a burden-shifting analysis. First, the defendant must make the threshold showing that the cause of action arises from a protected activity. Second, if the defendant can prove the case involves a protected activity, the plaintiff must demonstrate a probability of prevailing on the claim. *See Hailstone v. Martinez*, 169 Cal. App. 4th 728, 735, 87 Cal. Rptr. 3d 347 (2008). For the reasons that follow, Maximus has failed to establish that Plaintiff's claims arise from a protected activity.[10]

        1.    <u>A Matter of Public Concern</u>

In order to subject Plaintiff's claims to the anti-SLAPP statute, Maximus bears the burden of establishing that the complaint arises out of speech that is protected under the statute. *See Hailstone*, 169 Cal. App. 4th at 735. Speech that occurs outside a public forum can be protected

---

[10] As the Court finds that the case does not involve protected speech, the Court does not evaluate Plaintiff's probability of success on the merits.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

under the statute only if the communication is made in furtherance of the exercise of a constitutional right and in connection to a matter of public interest. *See* Cal. Code Civ. P. § 425.16(e). Moreover, speech directed to a limited group of individuals can become a matter of public interest only if made in connection with an ongoing controversy, debate, or discussion. *See Du Charme v. Int'l Bhd. of Elec. Workers, Local 45*, 110 Cal. App. 4th 107, 1 Cal. Rptr. 3d 501 (2003) ("[T]he allegedly defamatory statements in both cases were made not only in connection with an issue of interest to the members of the particular community, but also in the context of an ongoing controversy, debate or discussion within that community . . . . Thus protection of the statements . . . serves the anti-SLAPP statute's purpose of encouraging *participation* in an ongoing controversy, debate or discussion." (emphasis in original)).

In this case, Maximus made its recommendations for how much Global Excel and the Insurance Company Defendants should pay on six insurance claims without any direct connection to an ongoing controversy, debate, or discussion. Maximus argues that its recommendations are a matter of public interest because they make similar determinations for the state of California and the U.S. government. *See Mot.* 5:11-13. The focus of this argument is misdirected, however, because the issue is not *who* is speaking, but rather *what* is being said. Maximus also tries to argue that "the current debate in the U.S. Congress as to major changes in the country's health care systems and payments for medical services leaves no doubt as to the public interest at issue here." *Mot.* 5:18-20. However, this connection is too attenuated because its recommendations were limited to individual claims and individual health care transactions. *See Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP*, 146 Cal. App. 4th 841 (2007) (noting that the litigation arose out of a private matter even though the subject communication potentially involved "the provision of healthcare to thousands of patients").

At the hearing on its motion, Maximus also tried to argue that its recommendations involved a matter of public interest because Plaintiff's lawsuit could disrupt the system of independent claims evaluations. However, Maximus confuses what must be a matter of public interest under the statute. Rather than focusing on the consequences of the *litigation*, the Court evaluates the nature of the speech involved in the particular case to determine whether the speech is connected to a matter of public interest. Here, Maximus made recommendations on only six claims. This is an insufficient connection to a matter of public interest. *See id.* For these reasons, the Court finds that Maximus' recommendations were not protected under the anti-SLAPP statute. Accordingly, Maximus' special motion to strike is DENIED.

2. Attorneys' Fees and Costs

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

    Both parties request attorneys' fees as a "prevailing party" under the anti-SLAPP statute. *See* Cal. Code Civ. P. § 425.16(c). According to the anti-SLAPP statute, a prevailing plaintiff is entitled to attorneys' fees and costs if the special motion to strike was frivolous or solely intended to cause delay.[11] *See* Cal. Code Civ. P. § 425.16(c) ("If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court *shall* award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (emphasis added)); *Moore v. Shaw*, 116 Cal. App. 4th 184, 198, 10 Cal. Rptr. 3d 154 (2004). According to the statute, a court must examine the requirements of California Code of Civil Procedure § 128.5 when awarding fees under the anti-SLAPP statute.[12] *See Am. Dental Ass'n v. Khorrami*, No. 02-3853, 2004 WL 3486524, at *3 (C.D. Cal. 2004) (noting that the "reference to Section 128.5 of the California Code of Civil Procedure 'means a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute'" (quoting *Decker v. U.D. Registry, Inc.*, 105 Cal. App. 4th 1382, 1392, 129 Cal. Rptr. 2d 892 (2003))).

    Accordingly, a court will only award fees under the anti-SLAPP statute if "(1) the action or tactic is objectively 'frivolous,' and (2) the action was brought for an improper purpose, i.e. subjective bad faith.'" *Id.* (citation omitted). Furthermore, fees will only be awarded to a prevailing plaintiff in extraordinary circumstances and where the evidence of improper purpose is clear. *See id.* ("In applying [§ 128.5] the [California] Supreme Court has established several policy guidelines: (a) an action that is simply without merit is not by itself sufficient to incur sanctions; (b) an action involving issues that are arguably correct, but extremely unlikely to prevail should not incur sanctions; and (c) sanctions should be used sparingly in the clearest of

---

    [11] The anti-SLAPP statute also provides for attorneys fees if the defendant prevails on the special motion to strike. *See* Cal. Code Civ. P. § 425.16(c). As Maximus was unsuccessful in its special motion to strike, fees cannot be granted to Maximus under the statute.

    [12] California Code of Civil Procedure § 128.5 was repealed by implication when the California legislature enacted § 128.7. *See Clark v. Optical Coating Lab., Inc.*, 165 Cal. App. 4th 150, 164, 80 Cal. Rptr. 812 (2008). Despite its effective repeal, courts continue to apply § 128.5 to anti-SLAPP fee requests. *See Olmstead v. Gallagher & Co.*, 32 Cal. 4th 804, 817, 11 Cal. Rptr. 2d 298 (2004) ("That the Legislature has incorporated section 128.5's procedures, standards, or definitions in separate statutes which apply *in particular contexts* [including the anti-SLAPP context] does not undermine the conclusion that section 128.5, invoked in its own right, is generally inapplicable to actions and proceedings commenced after 1994.").

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#13/18/27**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3627 PSG (AJW) | Date | December 4, 2009 |
|---|---|---|---|
| Title | Cedars-Sinai Medical Center v. Global Excel Management *et al.* | | |

cases to deter the most egregious conduct." (quoting *In re Marriage of Reese & Guy*, 73 Cal. App. 4th 1214, 1220, 87 Cal. Rptr. 339 (1999))).

In this case, the connection between the broad issue of healthcare in America and Maximus' recommendations on six claims is highly attenuated, as discussed previously. Although Maximus' argument lacks merit, however, the record does not suggest that Maximus filed the special motion solely with an improper purpose or that its conduct was particularly egregious. Accordingly, the Court DENIES Plaintiff's request for attorneys' fees and costs associated with litigating this motion. Furthermore, because the Court denies Maximus' special motion to strike, its request for attorneys' fees under the statute is also DENIED.

V.   Conclusion

Based on the foregoing, the Court:

1. DENIES Maximus' Rule 12(b)(6) Motion to Dismiss;

2. DENIES Maximus' Special Motion to Strike;

3. DENIES Plaintiff's request for attorneys' fees and costs; and

4. DENIES Maximus' request for attorneys' fees and costs.

**IT IS SO ORDERED.**